UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

GARRETT CHAMBLIS                                                    PLAINTIFF


v.                              5:17-CV-00254-KGB-JTR


ESTELLA BLAND, GERALDINE
CAMPBELL, PATRICK DRUMMOND,
AMANDA ROSE SACKETT, AND
RONALD STUKEY                                                      DEFENDANTS


## RECOMMENDED DISPOSITION


The following Recommended Disposition ("Recommendation") has been sent

to United States District Judge Kristine G. Baker.   Any party may file written

objections to this Recommendation.   Objections must be specific and include the

factual or legal basis for disagreeing with the Recommendation.   An objection to a

factual finding must specifically identify the finding of fact believed to be wrong

and describe the evidence that supports that belief.

An original and one copy of the objections must be received in the office of

the United States District Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

## I. Introduction

Plaintiff Garrett Chamblis ("Chamblis"), a *pro se* prisoner, initiated this § 1983 action against five employees of Correct Care Solutions, Inc., a private health care provider for Arkansas Department of Correction prisoners. According to Chamblis, Defendants APRN Estella Bland ("APRN Bland"), ARPN Geraldine Campbell ("APRN Campbell"), ARPN Patrick Drummond ("APRN Drummond"), RN Amanda Rose Sackett ("RN Sackett"), and Dr. Ronald Stukey ("Dr. Stukey"), denied him adequate medical care for injuries to his right upper arm and shoulder and committed "medical malpractice/negligence."

Chamblis's only remaining constitutional claim is against APRN Bland.[1] He alleges that, between May 18 and August 29, 2017, she was deliberately indifferent to his serious medical needs related to his upper arm and shoulder injuries.

---

[1] The Court previously granted summary judgment and dismissed Chamblis's constitutional claims against the other four remaining Defendants because he failed to exhaust his administrative remedies on those claims. (*Docs. 81*, *83*).

However, his supplemental state law "medical malpractice/negligence" claims, spanning the time period between November 2016 to September 2017, are also still pending against all five Defendants.   (*Docs. 2 at p. 41*, *81 & 83).*

Defendants have filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Material Facts.   (*Docs. 87-89).*   APRN Bland argues she is entitled to summary judgment on Chamblis's inadequate medical care claim, and all Defendants argue that Chamblis's pendent state law claims should be dismissed.   Chamblis has filed a Response and supporting Brief.   (*Docs. 98, 99).*

For the reasons explained below, Defendants' Motion for Summary Judgment should be granted on the constitutional claim Chamblis has asserted against APRN Bland.   The Court should decline to exercise supplemental jurisdiction over Chamblis's pendent state law claims, making it unnecessary to address Defendant's Motion for Summary Judgment seeking dismissal of those claims, on the merits.

Before addressing the merits of Chamblis's constitutional claim against APRN Bland, the Court will summarize the relevant undisputed facts:[2]

---

[2]   Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50

1.      Chamblis initially was incarcerated in the East Arkansas Regional Unit ("EARU").   On May 9, 2017, he was transferred to VSM Supermax ("VSM"). (*Doc. 2 at ¶ 5, 19*).

2.      APRN Bland is a licensed APRN[3] and a Board Certified Family Nurse Practitioner.   She worked at VSM during the time period relevant to Chamblis's claims against her.

3.      APRN Campbell is a licensed APRN who worked at EARU during the relevant time period.

4.      APRN Drummond is a licensed APRN who worked at EARU during the relevant time period.

5.      RN Sackett is a Registered Nurse who worked at EARU during the relevant time period.

6.      Dr. Stukey is a Doctor of Osteopathic Medicine who was a unit

---

(1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[3] An APRN, or Advanced Practice Registered Nurse, is considered a mid-level provider within the ADC, where APRN job duties involve assessing, diagnosing, and managing patients, ordering tests, and prescribing medications.   (*See Docs. 89-2, 89-4, 89-5*).

physician at VSM during the relevant time period.

7.      In November of 2016, while housed at EARU, Chamblis experienced a "constant sharp severe pain in his right side and armpit area" while exercising. (*Doc. 2 at ¶ 13*).

8.      On November 22, 2016, RN Sackett examined Chamblis in the EARU infirmary.   Chamblis told RN Sackett:   "I have tore my muscle or something my wing (Right Side) I have knotted up muscles."   Chamblis reported that the injury occurred two months earlier, when he was doing pull ups.   Since that time, the muscles remained painful when he exercised.   RN Sackett offered to prescribe Naproxen for pain, but concluded that Chamblis required no further medical treatment.   Chamblis refused the offer of pain medication.   (Medical Records, Exh. A to Def.'s Statement of Material Facts, *Doc. 89-1* at 1 (*sealed*)).[4]

9.      On February 21, 2017, APRN Drummond saw Chamblis and examined the area around his armpit, where the proximal triceps tendon connects to the

---

[4] Defendants have attached the following exhibits to their Statement of Facts:   (1) Medical Records, Exhibit A, *Doc. 89-1* (sealed);   (2) Declaration of Patrick Drummond, Exhibit B, *Doc. 89-2*; (3)   Declaration of Dr. Ronald Stukey, Exhibit C, *Doc. 89-3*; (4) Declaration of Dr. Jeffrey Stieve, Exhibit D, *Doc. 89-4*; and (5) Declaration of Estella Bland, Exhibit E, *Doc. 89-5*. .

humerus.    After feeling a knot, APRN Drummond ordered an x-ray of Chamblis's

right humerus, but refused his request for a Tramadol prescription.    Instead APRN

Drummond prescribed Ibuprofen and Tylenol for pain.    (Exh. A or *Doc. 89-1* at pp.

4-8; APRN Drummond Declaration, Exh. B or *Doc. 89-2*; Dr. Jeffrey Stieve

Declaration, Exh. D or *Doc. 89-4*).

10.    On February 21, 2017, Chamblis's right shoulder was x-rayed at Forrest

City Medical Center ("FCMC").    The radiologist's report indicated that Chamblis's

right humerus and shoulder joint were normal.    (Exh. A or *Doc. 89-1* at 7-8).

11.    On March 8, 2017, Chamblis completed a sick call request, stating:

> I need to see the doctor about the ripped muscle in my side, I need to
> be scheduled for an appointment to have surgery to get it fixed.    This
> is the 4th time requesting this.

(Exh. A or *Doc. 89-1* at 9).

12.    On March 23, 2017, APRN Drummond examined Chamblis.    He noted

that conservative treatment, with rest and pain medications, had failed to resolve the

knot in Chamblis's right "proximal triceps tendon."    He ordered an MRI to rule out

a ruptured tendon.    (Exh. A or *Doc. 89-1* at 10-12; Exh. B or *Doc. 89-2*).

13.    On April 17, 2017, Chamblis was transported to FCMC for an MRI.

6

However, instead of following APRN Drummond's order, an unknown person at FCMC, presumably the MRI tech, wrote: "MRI of humerus would not include effected area, please order CT thorax and note mass/cyst in armpit." (Exh. A or *Doc. 89-1* at 16-19; Exh. B or *Doc. 89-2*).

14.     On April 19, 2017, APRN Campbell reviewed the note from the MRI tech and scheduled Chamblis for a CT. (Exh. A or *Doc. 89-1* at 19-22;   Exh. B or *Doc. 89-2*; Exh. D or *Doc. 89-4*).

15.     On May 5, 2017, Chamblis was transported to FCMC for a CT to assess a "mass or cyst" in his right armpit. The CT imaging report revealed "a mildly enlarged right axillary lymph node present . . . [which] could be infectious or inflammatory." A follow-up appointment was recommended. (Exh. A or *Doc. 89-1* at 23-24; Exh. B or *Doc. 89-2*; Exh. D or *Doc. 89-3*).

16.     Later on May 5, 2017, at 12:04 p.m., RN Sackett noted Chamblis's return to the EARU and wrote that the CD from "FCMC Radiology" had been placed in his medical jacket to be routed to a medical provider for review. (Exh. A or *Doc. 89-1* at 25; Exh. B or *Doc. 89-2*; Exh. D or *Doc. 89-4*).

17.     On Tuesday, May 9, 2017, at 7:34 a.m., Chamblis was transferred to VSM. His medical jacket was transported with him to VSM. It appears no medical

provider at EARU had an opportunity to review the CT results before Chamblis was transported to VSM.   (Exh. A or *Doc. 89-1* at 26; Exh. B or *Doc. 89-1* at 3).

18.    On May 11, 2017, Chamblis submitted a sick call request seeking the results of the CT scan.   (Exh. A or *Doc. 89-1* at 27).

19.    On May 18, 2017, APRN Bland treated Chamblis.  Her notes state that she reviewed his "jacket," but she could not locate the CT results.[5]  APRN Bland's plan was to have medical staff obtain the CT results and then schedule another follow-up visit with Chamblis.   (Exh. A or *Doc. 89-1* at 28-31; Exh. E or *Doc. 89-5*).

20.    During APRN Bland's examination of Chamblis on May 18, he told her that he was in extreme pain and that he needed Tramadol to effectively address his pain.   APRN Bland refused to prescribe Tramadol.[6]   (*Doc. 99 at 98*).   In making this decision, APRN Bland relied on the fact that, during the preceding two-

---

[5]  The record does not reveal whether:  (1) Chamblis's medical jacket arrived at VSM with or without the CD containing the CT results;   (2) assuming the CD got separated from the medical jacket, when and how that occurred; or (3) the CD was in the medical jacket all along, but simply was overlooked by APRN Bland on May 18, 2017 and by Dr. Stukey on July 28, 2017. None of these unresolved questions are material to the resolution of Chamblis's constitutional claim against APRN Bland.

[6]  Tramadol is a synthetic drug which is classified as an opioid due to its chemical make-up.   See https://www.drugs.com/ppa/tramadol.html (accessed February 26, 2020).

week period, Chamblis had signed to receive Ibuprofen and Acetaminophen (Tylenol) for pain, in sufficient quantities that he should not have needed any additional pain medication at that time.    (Bland Declaration, Exhibit E or *Doc. 89-5*).

21.    APRN Bland's examination of Chamblis on May 18, 2017, was the first and only time she saw him during the relevant time period, and it serves as the sole basis for his § 1983 inadequate medical care claim against her.   (Exh. E or *Doc. 89-5*).

22.    On June 23, 2017, Chamblis submitted a sick call request complaining of "two broke fingers, riped [sic] muscle, and elbow has a hole in it."   However, he later refused to be seen for this request.   (Exh. A or *Doc. 89-1* at 34).

23.    On July 17, 2017, Chamblis submitted another sick call request, again complaining about a ripped muscle and requesting another CT scan.   (Exh. A or *Doc. 89-1* at 36).

24.    On July 28, 2017, Dr. Stukey examined Chamblis, with the intention of following up on the earlier CT scan.   However, he could not locate the CD containing the CT report.   He planned to have Chamblis return after the CD was located.   (Exh. A or *Doc. 89-1* at 39; Exh. B or *Doc. 89-2* at 2).

25.    For reasons that are unclear, it was not until September 1, 2017, that

Dr. Stukey located and reviewed the May 5, 2017 CT scan *and* met with Chamblis

to discuss the findings.   To address the CT scan's recommendation for follow up

care to assess a "mildly enlarged right axillary lymph node," Dr. Stukey's treatment

decision was to refer Chamblis to a general surgeon to determine whether the lymph

node needed to be biopsied.   (Exh. A or *Doc. 89-1* at 40-43; Exh. B or *Doc. 89-2*;

Exh. C or *Doc. 89-3*).

26.    During Dr. Stukey's appointment with Chamblis, he   reported he was

routinely engaging in "extremely active" exercise, including over 1000 push-ups and

several sets of pull ups on a daily basis.   Chamblis reported that it was his "lay

opinion" he had a "muscle defect" requiring surgery in order to return his arm to "a

superior level."   Dr. Stukey disagreed and explained that the so-called "muscle

defect" had no impact on Chamblis's day-to-day activities and that no surgeon would

be likely to entertain such a surgery.   While Chamblis became very angry and asked

to leave, he agreed to Dr. Stuckey's plan to refer him to a general surgeon for further

evaluation of the lymph node.   (Exh. A or *Doc. 89-1* at 40, Exh. C or *Doc. 89-3*).


27.    On November 7, 2017, Dr. Buchman, a general surgeon, examined

Chamblis.   He noted a questionable right axillary soft mass.   His plan was to review the CT and determine if a biopsy was necessary.   (Exh. A or *Doc. 89-1* at 44).

28.   On November 9, 2017, APRN Bland reordered Acetaminophen to treat Chamblis's complaint of discomfort in his right armpit.   (Exh. A or *Doc. 89-1* at 45).

29.   On November 20, 2017, in response to Chamblis's request for "other medication" for his right arm pain, Dr. Stukey prescribed nortriptyline.   (Exh. A or *Doc. 89-1* at 49).

30.   On December 21, 2017, Dr. Stukey examined Chamblis for "continued pain of right upper inner arm."   Chamblis reported issues when he tried to do pull-ups, along with significant weakness and pain in the triceps area with forward and overhead reaching.   Dr. Stukey assessed Chamblis with a "healing triceps muscular tear."   Dr. Stukey noted that a general surgery consult was pending for a swollen lymph gland, but he ordered an additional orthopedic consult to address the muscle tear in Chamblis's right triceps.   (Exh. A or *Doc. 89-1* at 50).

31.   On January 9, 2018, Dr. Buchman requested an updated CT scan, and APRN Bland prepared a consultation request for a second CT.   (Exh. A or *Doc. 89-*

*1* at 55).

32.     On January 26, 2018, Dr. Antonio Howard, a board certified physiatrist

at University of Arkansas for Medical Sciences,[7] provided the orthopedic consult

ordered by Dr. Stukey on December 21, 2017.   Dr. Howard diagnosed Chamblis

with a "proximal long head of triceps tear" and chronic right shoulder pain.   Dr.

Howard ordered an MRI of Chamblis's right shoulder.   (Exh. A or *Doc. 89-1* at 57).

33.     On February 5, 2018, the follow-up CT ordered by Dr. Buchman was

performed at Jefferson Regional Medical Center, resulting in the following

impression:

> Right axillary lump corresponds to an accessory slip of latissimus dorsi
> muscle, as an *anatomic variant*; no mass, lymphadenopathy, or fluid
> collection demonstrated.

(Exh A or *Doc. 89-1* at 61) (emphasis added).

34.     On March 2, 2018, the MRI ordered by Dr. Howard was performed at

UAMS, resulting in the following impression:

> Complete chronic tear of the latissimus dorsi tendon with the torn
> retracted tendon end seen in the right axillary region.
>
> The anterior fibers of the latissimus dorsi muscle simulate a small mass

---

[7]   *See* https://uamshealth.com/provider/antonio-t-howard/ (website accessed February 20, 2020).

along the right chest wall close to the axillary region.    Multiple surrounding enlarged lymph nodes which demonstrate a fatty hilum and are likely benign and reactive.

(Exh. A or *Doc. 89-1* at 63-65).

35.    On March 28, 2018, Dr. Buchman reviewed the results of the CT, concluded that Chamblis's injury was consistent with a muscle tear, no lymph node biopsy was necessary, and released Chamblis from care with no recommendation for follow up.    (Exh. A or *Doc. 89-1* at 70).

36.    On June 11, 2018, Dr. Howard examined Chambliss.    He concluded Chambliss had a complete tear of the latissimus dorsi, advised Chambliss he could continue activity as tolerated, further advised that no surgery was indicated, recommended analgesics as needed for his shoulder pain, and released Chamblis from care with no recommendation for follow up.    (Exh. A or *Doc. 89-1* at 71).

## II.    Discussion

### A.    Chamblis's Deliberate Indifference Claim Against APRN Bland Should Be Dismissed, With Prejudice.

To demonstrate that his inadequate medical care claim against APRN Bland should proceed to trial, Chamblis must produce evidence showing that:    (1) he had an objectively serious need for medical care to treat his right upper arm and shoulder injuries; and (2) APRN Bland subjectively knew of, but was deliberately indifferent

to, that serious medical need.  *See Saylor v. Nebraska,* 812 F.3d 637, 644 (8th Cir. 2016); *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).

Chamblis's problems with his right upper arm and shoulder created an objectively serious need for medical care.    However, there is *no evidence* that APRN Bland was deliberately indifferent in providing the medical care he needed during the *one time* she saw Chamblis and provided treatment.

Chamblis contends that, on May 18, 2017, APRN Bland violated his constitutional rights by:  (1)  failing to prescribe effective pain medication;  (2) failing to locate the CT results; (3) and refusing to reorder another CT.  Chamblis argues that these medical decisions unnecessarily prolonged his pain and suffering and denied him appropriate medical care and treatment.  (*Doc. 99 at 5)*.

On the issue of pain medication, ARPN Bland has submitted a declaration explaining that she did not prescribe the narcotic pain medication that Chamblis requested because he was already taking Ibuprofen and Acetaminophen.  (Exhibit E or *Doc. 89-5*).   Defendants have also submitted a declaration from medical expert, Dr. Jeffrey Stieve ("Dr. Stieve"), who is a licensed physician.   In his medical opinion, Chamblis was prescribed "appropriate medication" when he complained of pain.   (Exhibit D or *Doc. 89-4* at 2).

14

Chamblis's disagreement with APRN Bland's *medical decision* on the appropriate medication for his pain is *not* sufficient to create a material question of fact about whether APRN Bland acted with deliberate indifference in making that decision. It is well settled that a prisoner's "mere disagreement" with a medical provider's prescribed course of treatment is insufficient to establish a deliberate indifference claim. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

With regard to the CT scan, APRN Bland states that the CT results were not available to her when she examined Chamblis on May 18. However, because she realized it was important to locate and review the CT results, she directed other staff to locate and review those results. (Exhibit E or *Doc. 89-5*). Dr. Stieve opines that APRN Bland's plan to ask medical staff to obtain the CT results and to reschedule a mid-level visit, once the records were obtained, was medically appropriate. Dr. Stieve also opines that he sees "no evidence of medical negligence" on her part. (Exhibit D or *Doc. 89-4* at 4).

15

Chamblis speculates that the CD containing his CT results was in the front of his medical jacket, but APRN Bland failed or deliberately refused to review the records.  (*Doc. 99 at 5*).   At best, this speculation, even if true, would demonstrate only that APRN Bland was negligent, which is insufficient to prove deliberate indifference. To prevail on his argument that APRN Bland was deliberately indifferent, Chamblis must present evidence capable of establishing that APRN Bland "reckless[ly] disregard[ed] a known risk."  *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001).   In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).   Even if APRN Bland had located and read the CT results on May 18th, it would *not* have put her on notice of *any* risk of harm to Chamblis, because those results merely recommended "follow-up care."

Finally, while APRN Bland's failure to locate the May 5, 2017 CT scan may have resulted in a short delay in Chamblis receiving additional medical care, he has failed to present any verifying medical evidence demonstrating that he was harmed by any such delay.   Ultimately, Chamblis received the follow-up care recommended by his first CT scan, in the form of an additional CT scan and a consultation with a general surgeon, Dr. Buchman.   Chamblis also received an MRI and a consultation

16

with a physiatrist, Dr. Howard.   The additional testing, as interpreted by these two

doctors, determined that Chamblis's enlarged lymph nodes were either a muscle

variant or the remnants of a tendon or muscle tear.   Both Dr. Buchman and Dr.

Howard recommended no further treatment.   Thus, even if Chamblis could prove

that APRN Bland knew the risk of harm and acted with deliberate indifference in

not locating the CT results, he cannot prove that he suffered any harm as a result of

the short delay in treatment caused by APRN Bland's actions or inactions on May

18, 2017.

Accordingly, APRN Bland's Motion for Summary Judgment on Chamblis's

inadequate medical care claim should be granted, and Chamblis's sole remaining

constitutional claim should be dismissed, with prejudice.

**B.     Chamblis's Pendent State Law Claims Should Be Dismissed, Without Prejudice.**

The Court must now consider whether, in the absence of any federal claims,

it should exercise supplemental jurisdiction over Chamblis's remaining state-law

claims pursuant to 28 U.S.C. § 1367.   It is well settled that a federal trial court may

decline to exercise supplemental jurisdiction over pendent state law claims when all

of the federal claims over which the court had original jurisdiction have been

dismissed.   S*ee* 28 U.S.C. § 1367(c)(3);   *Gibson v. Weber*, 431 F.3d 339, 342 (8th

17

Cir. 2005) (holding that a district court did not err when it declined to exercise supplemental jurisdiction over a state medical malpractice claim after the inmate's federal claims were dismissed due to a lack of exhaustion).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent [or supplemental] jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7 (1988).   The Eighth Circuit has stressed "the need to exercise judicial restraint and avoid state law issues whenever possible" and to "provide great deference and comity to state court forums to decide issues involving state law questions." *Candor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).

After considering all of these factors, the Court should decline to exercise supplemental jurisdiction over Chamblis's pendent state law claims.   Thus, the Court should dismiss those remaining claims, without prejudice, so that Chamblis can pursue them, if he chooses, in *state court*.

### III.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

18

1.    Defendants' Motion for Summary Judgment filed by Estalla Bland, Geraldine Campbell, Patrick Drummond, Amanda Rose Sackett, and Dr. Ronald Stuckey *(Doc. 87)* be GRANTED IN PART, on Chamblis's sole remaining constitutional claim that APRN Bland provided inadequate medical care.

2.    Chamblis's constitutional claim against Defendant APRN Bland be DISMISSED, WITH PREJUDICE.

3.    All remaining state law claims asserted by Chamblis against Defendants APRN Bland, APRN Campbell, APRN Drummond, RN Sackett, and Dr. Stukey be DISMISSED, without prejudice, based on the Court's decision not to exercise supplemental jurisdiction over those claims.

It is further recommended that the Court certify that an *in forma pauperis* appeal would not be taken in good faith.

Dated this 26th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE